***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence and upon reconsideration the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner:
 STIPULATIONS *Page 2 
1. At all relevant times, Defendant-Employer had three or more employees and the above-noted parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The above-named parties are properly before the Industrial Commission, which has jurisdiction of this claim and subject matter.
3. At all relevant times, an employee-employer relationship existed between Plaintiff and Defendant-Employer.
4. At all relevant times to this action, Stanley Furniture Company was self-insured for the purposes of meeting the requirements of the North Carolina Workers' Compensation Act, with Specialty Risk Services, Inc., acting as third party administrator.
5. Plaintiff contends and Defendants deny that Plaintiff experienced a compensable injury to his left arm and right arm.
6. Plaintiff's average weekly wage was $412.58 which yields a compensation rate of $275.05 per week.
7. Plaintiff was hired by Stanley Furniture on September 30, 2008, as a production specialist and last worked for Defendant-Employer on January 8, 2010.
8. The issues presented before the Full Commission:
 a. Whether Plaintiff experienced compensable injury by accident or compensable occupational disease to his left and/or right elbow and arm?
 b. If so, to what indemnity and medical compensation is Plaintiff entitled?
 c. Whether Plaintiff remains disabled as a result of any alleged compensable decision?
 *********** *Page 3 EXHIBITS
The following were marked and received into evidence at the hearing before the Deputy Commissioner:
 a. Stipulated Exhibit #1: Medical records, I.C. Forms, personnel file, discovery, photos, correspondence; and
 b. Stipulated Exhibit #2: DVD of job performance.
 *********** DEPOSITIONS
The following were received into evidence after the hearing before the Deputy Commissioner:
 a. Angelo Charles Cammarata, M.D.;
 b. Brent Davis, M.D.;
 c. Matthew Adam Weingold, M.D.;
 d. William McClure; and
 e. Debbie Allen, P.A.C.
 ***********
Based upon the preponderance of the evidence of the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 44 years of age. He graduated from high school in Cuba and immigrated to the United States in 1989. He moved to western North Carolina in 1999. Plaintiff is left hand dominant. *Page 4 
2. Plaintiff was hired to work for the Defendant-Employer in November of 2008 as a finisher/drawer-loader. Plaintiff worked continuously as a drawer-loader for the Defendant-Employer through January 8, 2010.
3. The Defendant-Employer is a furniture manufacturer. During Plaintiff's employment with Defendant-Employer he loaded drawers into cases or cabinets, which came by Plaintiff on a conveyor belt. The drawers were brought to Plaintiff's work area in stacks. With the exception of approximately 50 minutes each day for lunch and rest breaks, the task continuously performed by Plaintiff was removing drawers from the conveyer staging area, sliding these drawers, which weigh 3 to 11 pounds, into the cases which were passing Plaintiff on a conveyer belt. Plaintiff also swept the floors as needed.
4. While performing his job duties for Defendant-Employer, Plaintiff used both hands and arms to pick up the drawers in the staging area. Plaintiff would then turn and carry the drawers two to three feet to the case passing on the conveyer belt and slide them into the case or cabinet. The cabinets varied in height. Drawers were placed from near the bottom of the conveyor belt to shoulder height or higher.
5. Plaintiff estimated that during a regular shift he would carry, move, and insert 1,000 to 1,500 drawers per day into passing cabinets. The ergonomist, William McClure, testified that during an average shift a worker performing this job would insert an estimated 1,559 drawers per day into cabinets.
6. An "Ergonomic Work-Task Analysis" compiled by Mr. McClure on July 13, 2010, indicates that the conveyor line is 19 inches above floor level; the drawers stacked on the conveyor line are 10-80 inches above floor level; and the sliding drawer cases are 24-75 inches above the floor. Plaintiff testified that the drawers weighed 12-13 pounds. The "Ergonomic *Page 5 
Work-Task Analysis" indicated that the drawers weighed between 3-11 lbs, with frequent initial force to push the drawer into the case of 30-35 pounds. Mr. McClure's report does clarify that a double track case requires a greater level of difficultly in order to push the drawer into the case. However, there were no double track cases under production on July 13, 2010, therefore, Mr. McClure's report does not accurately reflect the work conditions to which the Plaintiff was exposed. Finally, the report indicates that the "force measurements would not accurately reflect the amount of force that the Drawer Loader is exposed to since all cases that reach the Drawer Loader's station are secured only at one end, thus making it more difficult to push the drawer in."
7. In April of 2009, Plaintiff began to have left arm pain, pain in his left elbow, as well as pain radiating into his fingers. At this time Plaintiff had been working continuously as a drawer-loader. Plaintiff went to his employer's office to see Glenda Bradley, the Defendant-Employer's nurse, and complained of elbow pain. Plaintiff testified that Ms. Bradley was not available, but that "another woman who was sitting at the front went back to her [Ms. Bradley's] office and brought back a blue bandage and put it on my elbow."
8. Plaintiff returned to Ms. Bradley, with continued complaints of left elbow pain and that the bandage was not helping. Plaintiff was referred to see a physician's assistant at his workplace on May 21, 2009. The physician's assistant, Debbie Allen, testified at her deposition that she formed an assessment of lateral epicondylitis, or tennis elbow, of the left elbow. Ms. Allen prescribed anti-inflammatory medicine, a home exercise program and a different elbow wrap. She also told Plaintiff to try and alter something in his position or grip, in the way he performed his job. *Page 6 
9. Plaintiff continued to treat with Ms. Allen as he continued to experience pain in his left elbow and left arm. Plaintiff last saw Ms. Allen on September 10, 2009, and she recommended that he see an orthopedist because he had not responded to the anti-inflammatory patches or any of the other conservative care which she had prescribed.
10. As a result of the ongoing pain which Plaintiff was experiencing he sought care with a local orthopedic surgeon, Dr. Brent Davis. Plaintiff presented to Dr. Davis on September 23, 2009. Dr. Davis diagnosed Plaintiff with lateral epicondylitis. He recommended Plaintiff undergo occupational therapy, prescribed anti-inflammatory medication, and a splint.
11. Plaintiff returned to Dr. Davis on October 29, 2009, with ongoing left arm and left elbow problems. On the same date, Dr. Davis wrote a letter for Plaintiff's employer stating that repetitive activity was leading to tennis elbow in the left elbow, and requested that Plaintiff be allowed "to perform a different task."
12. After Dr. Davis' recommendation, Plaintiff testified that he requested to be allowed to change positions and perform a different job and he was told that Defendant-Employer did not have a position for him. On November 30, 2009, the plant nurse, Glenda Bradley, wrote a letter stating that Plaintiff had "requested a transfer due to chronic tendonitis in his left elbow" and that this request was being denied because Plaintiff's workers' compensation claim had been denied. Plaintiff remained at his regular drawer-loader position, which he continued to perform.
13. Plaintiff returned to Dr. Davis on January 7, 2010, at which time he reported ongoing pain in both his right and left elbows. Dr. Davis wrote a letter in which he stated Plaintiff could return to work on January 8, 2010, with restrictions which included no lifting greater than ten pounds and no repetitive upper extremity activity. *Page 7 
14. Plaintiff testified that he could not perform his regular job within these restrictions. As Plaintiff was not allowed to work another position with Defendant-Employer, he has been unable to work as of January 8, 2010.
15. Plaintiff returned to Dr. Davis on February 4, 2010, at which time he reported an improvement in his right elbow but increasing pain in the left elbow, on the lateral side. As a result of the ongoing problems which Plaintiff was experiencing, Plaintiff underwent left elbow surgery, which was performed by Dr. Davis on March 23, 2010. Upon operating on Plaintiff's left elbow, Dr. Davis testified at his deposition that he noted that the tendon looked "unusual or it looked like it had been essentially injured."
16. Plaintiff was written out of work from the date of surgery on March 23, 2010. On April 29, 2010, Plaintiff returned to Dr. Davis with complaints of continued or worsening pain. On June 10, 2010, Plaintiff presented to Dr. Davis with continuing bilateral elbow pain, and Dr. Davis recommended that Plaintiff undergo a second opinion evaluation because of the ongoing pain he was experiencing. Dr. Davis last saw Plaintiff on July 28, 2010, at which time Plaintiff was experiencing pain in both elbows, as well as tingling in his arms and dropping things. Dr. Davis testified that on July 21, 2010, he wrote a letter that Plaintiff "may not return to work" as Plaintiff was not getting better.
17. Due to Plaintiff's ongoing bilateral elbow pain, Plaintiff presented to Dr. Angelo Cammarata, an orthopedic surgeon specializing in hand and upper extremity care on July 2, 2010. Dr. Cammarata diagnosed Plaintiff with lateral epicondylitis of both elbows, as well as radial tunnel syndrome of the left forearm. Dr. Cammarata recommended that Plaintiff consider changing his employment. *Page 8 
18. As a result of the ongoing problems that Plaintiff was experiencing, Dr. Cammarata recommended surgery on Plaintiff's left arm. Plaintiff underwent surgery on August 31, 2010, on his left arm to release the radial tunnel as well as a revision surgery on the lateral epicondyle region. After the surgery, Dr. Cammarata released Plaintiff to return to one-handed duty work. Plaintiff was to be out of work if no light duty was available within the restrictions given. Dr. Cammarata continued to restrict Plaintiff from regular work as of the date of his deposition, October 27, 2010.
19. Dr. Cammarata viewed the photographs introduced into evidence of Plaintiff's work-site, specifically the drawers stacked in the staging area. Dr. Cammarata opined that the picking up of these drawers and turning them 90 degrees as well as pushing them forward would require flexing and extending of the wrist, which results in radial tunnel syndrome.
20. On October 27, 2010, Dr. Cammarata testified that he was not ready to send Plaintiff back to his regular job, as illustrated in the photographs taken by Plaintiff and introduced into evidence. Dr. Cammarata testified that although he has diagnosed carpal tunnel syndrome, which he did not believe was related to Plaintiff's work, his continuing restrictions were more because of his elbow problems as opposed to the carpal tunnel syndrome condition which he has diagnosed. The restrictions given by Dr. Cammarata after revision of the left elbow epicondylitis surgery as well as the left radial tunnel syndrome were light duty, using the left hand as an assist, only.
21. Dr. Cammarata opined that someone involved in repetitive work with no significant breaks or rotation is more likely than the public at large to develop elbow problems such as lateral epicondylitis. Plaintiff's care with Dr. Angelo Cammarata for his right and left elbows and arms was causally related to his repetitive activity at work. *Page 9 
22. Dr. Davis testified that the reaching up and grabbing drawers, as well as bringing them into a position to place them into cases or cabinets would require flexion and extension of the wrists.
23. Dr. Davis opined that Plaintiff's job as a drawer-loader more likely than not caused the bilateral elbow problems for which he provided care to Plaintiff. Dr. Davis opined that lateral epicondylitis is an "overuse problem". When patients experience this problem, Dr. Davis recommends that they stop the repetitive activity. Dr. Davis opined that Plaintiff's job as drawer-loader placed him at a greater risk than the public at large for the problems which he presented with both his right and left elbows.
24. Dr. Davis also reviewed the videos of Plaintiff's job duties and opined that the video did not alter his opinion that the job Plaintiff was performing caused his right and left elbow problems, or his opinion that the drawer-loader job placed Plaintiff at a greater risk than the public at large for the contraction of these problems.
25. Dr. Matthew Adam Weingold testified at his deposition that he reviewed Plaintiff's medical records, job description, and the video of Plaintiff's job. Dr. Weingold did not examine or provide any medical treatment to Plaintiff. Dr. Weingold opined that he did not see anything in Plaintiff's job that "looked like it could have been any greater risk for developing epicondylitis."
26. Based upon the preponderance of the evidence of the record and the credible medical evidence, the Full Commission gives greater weight to the opinions of Drs. Davis and Cammarata who treated Plaintiff extensively and who, in Dr. Cammarata's case is a specialist in hand and upper extremity, over Dr. Weingold who only completed a records review and never met or evaluated Plaintiff. *Page 10 
27. Based on the preponderance of the evidence of the record, the Full Commission finds that the medical treatment Plaintiff has received from Drs. Davis and Cammarata has been reasonable, necessary and intended to effect a cure, give relief and lessen the period of Plaintiff's disability.
28. Based upon the preponderance of the evidence of the record and the credible medical testimony of Drs. Davis and Cammarata, the Full Commission finds that Plaintiff has not worked since January 8, 2010. During this time Plaintiff has either been totally restricted from work or given restrictions which do not allow him to return to his regular drawer-loader job. The Full Commission further finds, based upon the preponderance of the evidence of the record, that Plaintiff has asked the Defendant-Employer to allow him to work at other positions, but has not been allowed to do so.
29. Based upon the preponderance of the evidence of the record and the credible medical testimony of Drs. Davis and Cammarata, the Full Commission finds that Plaintiff's employment as a drawer-loader placed him at an increased risk for and caused the development of bilateral epicondylitis as well as radial tunnel syndrome.
30. Based upon the preponderance of the evidence of the record and the credible medical testimony of Drs. Davis and Cammarata, the Full Commission finds that Plaintiff's employment as a drawer-loader was a significant contributing factor to his development of bilateral epicondylitis as well as radial tunnel syndrome.
31. Based upon the preponderance of the evidence of the record and the credible medical testimony of Drs. Davis and Cammarata, the Full Commission finds that Plaintiff has been unable to return to his regular duty as a drawer-loader because of bilateral epicondylitis of the right and left elbows, as well as radial tunnel syndrome of the left arm. Plaintiff has been *Page 11 
unable to earn wages in the same or any other employment and has been temporarily and totally disabled since January 8, 2010.
32. The parties stipulated and agreed that Plaintiff had an average weekly wage of $412.58 which yields a compensation rate of $275.05.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, plaintiff has the burden of proving every element of compensability. As part of this burden, plaintiff must present convincing evidence establishing these elements, including, in this case, expert medical testimony.Holly v. ACTS, Inc.,357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003); Harvey v. RaleighPolice Department, 96 N.C. App. 28, 35, 384. S.E.2d 549, 553, disc. rev. denied,325 N.C. 706, 388 S.E.2d 454 (1989).
2. In order for an occupational disease to be compensable under N.C. Gen. Stat. § 97-53(13), plaintiff must establish both increased risk and causation. N.C. Gen. Stat. § 97-53(13);Rutledge v. Tutlex Corp.,308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983). Fann v. BurlingtonIndust., 59 N.C.App. 512, 296 S.E.2d 819 (1982); Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
3. Increased risk is proved by showing: (1) that the disease is "characteristic of" and "peculiar to" individuals engaged in the claimant's particular trade or occupation; and (2) that their disease is not one to which the general public is equally exposed.Booker v. Duke Medical Center,297 N.C. 458, 256 S.E.2d 189, (1979). "A disease is `characteristic' of a profession when there is a "recognizable link" between the nature of the job and an increased risk of *Page 12 
contracting the disease in question." Id. at 472. A disease is "peculiar to the occupation" when the conditions of the employment result in a hazard which distinguishes it in character from employment generally. Id. at 473.
4. Plaintiff in this case has proven by the preponderance of the evidence that the tasks required by his employment as a drawer-loader with Defendant-Employer placed him at greater risk than the general public of developing bilateral epicondylitis and radial tunnel syndrome of the left arm. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tutlex Corp.,308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983), Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
5. Regarding the causation requirement, Plaintiff has proven by the preponderance of the evidence that the tasks required by his employment as a drawer-loader with Defendant-Employer caused or significantly contributed to the development of his bilateral epicondylitis and radial tunnel syndrome of the left arm. N.C. Gen. Stat. § 97-53(13); Rutledge v. Tutlex Corp.,308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983), Fann v. BurlingtonIndust., 59 N.C.App. 512, 296 S.E.2d 819 (1982); Booker v. DukeMedical Center, 297 N.C. 458, 256 S.E.2d 189 (1979).
6. Plaintiff's date of last injurious exposure to the repetitive activity required in his position as drawer-loader was January 8, 2010. Plaintiff was disabled when he was told by Dr. Davis that he should lift no greater than ten pounds and should not engage in repetitive upper extremity activity, and has been totally disabled since January 8, 2010. N.C. Gen. Stat. 97-29
7. Defendants are responsible for payment of all medical expenses incurred or being incurred by Plaintiff for reasonably necessary medical treatment for both of his elbows and his left arm injuries, including the treatment rendered by Dr. Davis and Dr. Cammarata for *Page 13 
Plaintiff's bilateral epicondylitis as well as radial tunnel syndrome. N.C. Gen. Stat. §§ 97-2(19), 97-25.
8. Plaintiff has met his burden of proving disability, as defined as a loss of wage-earning capacity. Russell v. LowesDistribution,108 N.C. App. 762, 425 S.E. 2nd 454 (1993). Plaintiff can satisfy his burden of proving disability in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of working in any employment; (2) the production of evidence that he is capable of some work but that he has, after reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than he earned prior to his injury.Id. In the present case, the evidence establishes that Plaintiff has been physically incapable of working, has been unable to earn wages in the same or any other employment, and has been totally disabled since January 8, 2010, due to his bilateral epicondylitis and radial tunnel syndrome of the left arm. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, Defendants shall pay temporary total disability compensation to Plaintiff at the rate of $275.05 per week for the period beginning January 8, 2010 and continuing. All accrued compensation shall be paid in a lump sum. *Page 14 
2. A reasonable attorney's fee of twenty-five (25%) percent of the compensation awarded to Plaintiff in paragraph one above is hereby approved for Plaintiff's counsel and shall be paid as follows: twenty-five (25%) percent of any lump sum due to Plaintiff shall be deducted and paid directly to Plaintiff's counsel. Thereafter, Plaintiff's counsel shall receive every fourth compensation check due to Plaintiff.
3. Defendants shall pay all medical expenses incurred or to be incurred when the medical bills have been submitted according to establish Industrial Commission procedures, for Plaintiff's bilateral epicondylitis and radial tunnel syndrome on the left arm.
4. Defendants shall pay the costs.
This the ___ day of October 2011.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ TAMMY R. NANCE COMMISSIONER *Page 1